# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Jan 25, 2024
s/ D. Olszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
the location of the target cellular devices assigned International ) Case No. 24 MJ 48
Mobile Subscriber Identity (IMSI) number IMSI 310240265327154. )
The service provider for the Target Cellular Devices is T-Mobile. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the **Eastern** District of **Wisconsin**, there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) and 2(a) | Hobbs Act Robbery |
| 18 U.S.C. § 924(c)(1)(A)(ii) | Brandishing a Firearm during a Crime of Violence |

The application is based on these facts:
Please see Affidavit.

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Kaiser, Special Agent, FBI
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
**telephone** *(specify reliable electronic means)*.

Date: 01/25/2024

_____
*Judge's signature*

City and state: Milwaukee, WI        Honorable William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Kevin Kaiser, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular devices assigned International Mobile Subscriber Identity (IMSI) number IMSI 310240265327154 referred to in this affidavit as the "Target Cellular Device." The service provider for the Target Cellular Devices is T-Mobile. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information; and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2. Under Federal Rule of Criminal Procedure 41, a magistrate judge having authority in any district where activities related to the crime may have occurred, may issue a warrant for property that is located outside the jurisdiction of any state or district.

3. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since April of 2023. Since April of 2023, I have been assigned to the FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed

motor vehicle robberies, and other violent crime matters, as defined under Title 18 of the United States Code. I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4. The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that an unknown subject has been using a Target Cellular Device and did so during multiple robberies. I know from training and experience that cell phone users normally have their cellular telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Cellular Device will constitute and lead to evidence of federal offenses in violation of Title 18, United States Code, Sections 1951(a) (Hobbs Act Robberies) and 924(c) (brandishing a firearm during a crime of violence). Accordingly, unknown subject is the "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

## PROBABLE CAUSE

6. On Saturday, December 30, 2023, at 8:17pm, Village of Butler Police Officer Knapp responded to the Amoco gas station, located at 12419 W. Hampton Ave., in the Village of Butler, in the Eastern District of Wisconsin, for a report of an armed robbery that had just occurred. The Amoco gas station was a business involved in interstate commerce and the below-described robbery affected interstate commerce.

7. Upon his arrival, Officer Knapp spoke to the victim, who is employed as a clerk at the gas station and identified as D.C.M. D.C.M. stated that at approximately 8:10pm, a black male in his late 20s to early 30s, approximately 6'00" tall, and weighing approximately 215 pounds entered the gas station. The suspect asked D.C.M. about an item and then pulled out a black handgun and stated, "Give me all the money, no, hurry up or I'll pop you." D.C.M. complied and gave the suspect all of the money from the register. A total of approximately $1,162 was taken without consent.

8. The robbery was captured on video cameras located at the Amoco gas station. The video shows the suspect pointing a black semi-automatic handgun at the victim during the robbery.

9. On Friday, January 12, 2024, at approximately 6:56pm, the Walgreens located at 7171 N. Teutonia Ave., in the City and County of Milwaukee, in the Eastern District of Wisconsin was robbed. Milwaukee Police Det. Michael Lees responded and investigated the robbery. The Walgreens was a business involved in interstate commerce and below-described robbery affected interstate commerce.

10. Det. Lees spoke to the victim, M.T., who is employed as a Customer Service Associate at Walgreens. M.T. stated the suspect that ultimately robbed her first came into the store at 5:42pm. M.T. described the suspect as a black male 6'00" to 6'01" tall, with a thin build. M.T.

stated the suspect had facial hair and was wearing a black sweatshirt with a red hood, red and white chevron on the elbows and "Chicago" written on the chest. The suspect was wearing black pants and black gloves. The suspect asked M.T. about loading money onto a gift card and then left. At approximately 6:52pm, the suspect returned to M.T.'s register and stated he wanted to load the gift card. When asked how much money the suspect wanted to put on the gift card he stated $5 and gave M.T. money. When M.T. opened the register, the suspect displayed a black semi-automatic handgun, pointed it at her and stated, "Give me everything!" M.T. began giving the suspect money from the register and the suspect himself reached over into the register and took money. The suspect then ran out of the store to the alley behind the store. A total of $319.02 was taken without consent.

11. The robbery was captured on video cameras located at the Walgreens. I viewed still images form the robbery which occurred at the Walgreens on January 12, 2024, and compared those with images of the suspect that robbed the Amoco gas station on December 30, 2023. The suspect appeared to be the same person. The suspect was wearing what appeared to be the same hat and had the same type of black gloves on. The suspect's face is unmasked, and clear images of his face were captured in both incidents.

12. On January 17, 2024, at approximately 9:31pm, officers from the Wauwatosa Police Department were dispatched to an armed robbery at the No 1 Chinese Restaurant, located at 6119 W. North Ave., in Wauwatosa, Wisconsin. Upon arrival, Officer Gerstmeier obtained a statement from the victim, identified as M.Q.D. M.Q.D. stated she was robbed by a black male who was armed with a handgun. The suspect pointed the gun at M.Q.D. and demanded money from the register. The suspect obtained $208 without consent. The robbery discussed herein affected interstate commerce.

13. The robbery was captured by video cameras inside of the restaurant. I viewed the video and found the suspect who committed the robbery at the No 1 Chinese Restaurant appeared to be the same individual who committed the robberies at the Amoco gas station located in Butler and the Walgreens located on N. Teutonia Ave. in Milwaukee previously detailed in this affidavit.

14. I searched the address 6119 W. North Ave., Wauwatosa, Wisconsin, and found the GPS coordinates for the location are Latitude 43.060599, Longitude -87.989374.

15. Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

16. On January 5, 2024, a search warrant was obtained through the United States District Court - Eastern District of Wisconsin for the tower dump / area search records related to the Amoco robbery which occurred on December 30, 2023. On January 18, 2024, the United States District Court – Easter District of Wisconsin issued an order for the tower dump and search warrant for area search records related to the Walgreens robbery which occurred on January 12, 2024. On January 22, 2024, the United States District Court – Easter District of Wisconsin issued an order for the tower dump and search warrant for area search related to the No 1 Chinese Restaurant robbery, which occurred on January 17, 2024.

17. The Milwaukee Police Department investigated an Armed Robbery of the Dollar Tree located at 7600 W Capitol Dr on January 24, 2024. (MPD # 24-024-0141) Detective Roman Martinez was the lead Detective. Below is a summary of events based upon MPD reports.

18. On January 24, 2024, at approximately 7:30PM, a black male entered the Dollar Tree located at 7600 W Capitol Drive in Milwaukee, Wisconsin. This suspect walked around the

5

aisles of the store briefly, and selected several items from the shelves. The suspect then approached cash register 1 and placed items on the belt. The Victim/Employee, T.A.J., was processing the transaction when the suspect produced a handgun, pointed it at her, and stated "open the fucking drawer" repeatedly. The suspect also pointed the handgun at Victim/Employee, J.A.W., who was standing nearby, and demanded that she open a cash register as well. The victim employees complied with the suspect's demands by placing the cash register trays on top of the counter. The suspect then removed the cash from the trays and placed the money in his pocket. During this robbery, the suspect ordered both cashiers to lay on the floor. The suspect obtained approximately $814.81 in US Currency. Afterward, the suspect fled the business eastbound towards N. 76th St. The robbery discussed herein affected interstate commerce.

19. The Affiant reviewed the surveillance video. The suspect is described as a black male, approximately 25-35 years old, approximately 5'10"-6'02" tall, weighing approximately 200-230 pounds, and wearing a black hooded sweatshirt with the "GAP 1969" in white lettering. He was also wearing black pants and shoes. The suspect was armed with a black handgun.

20. The Affiant recognizes that the Dollar Tree robbery suspect matches the physical description of the suspect in all the aforementioned robberies. In addition, the suspect is wearing the same distinct sweatshirt the suspect wore in the Wauwatosa No 1 Chinese Restaurant robbery at 6119 W North Ave on January 17, 2024.

## IDENTIFCATION OF TARGET CELLULAR DEVICE

21. Results from the previously issued warrant and court order were received and analyzed for the incident at the Amoco gas station in Butler, Wisconsin. Upon reviewing the records, multiple International Mobile Security Identification (IMSI) numbers were identified and analyzed through the T-Mobile cellular network. The IMSIs were narrowed to a list of identifiers

that had records consistent with the area around the time and for the duration the subject was observed to be in the area based on video surveillance. Further analysis identified specifically an account with IMSI 310240265327154, hereinafter **TARGET CELLULAR DEVICE,** who's records were found to be consistent with not only the Amoco gas station but two (2) other areas where the subject vehicle was observed on video surveillance the day of the robbery. Records showed the **TARGET CELLULAR DEVICE** in the area between approximately 7:40 PM and 8:15 PM. This is consistent with the incident time of approximately 8:10 PM and the subject's phone leaving the area after the incident.

22. On January 23, 2024, T-Mobile provide the area search and tower dump returns for the Walgreens incident which occurred on January 12, 2024. Upon reviewing the accounts, it was identified that the **TARGET CELLULAR DEVICE** also had records within the initial search parameters of the warrant. Further review showed records for the **TARGET CELLULAR DEVICE** in the geographic area between approximately 5:35 PM and 6:56 PM. These times are consistent with the 5:42 PM and 6:52 PM timestamps for the subject within the store and based on the records stopping at 6:56 PM also consistent with the subject phone leaving the area after the incident.

23. Notably, law enforcement is still waiting on records related to the No. 1 Chinese restaurant robbery on January 17, 2024.

24. Your affiant notes that while other IMSI did have records in both the two incidents noted above that the other IMSI initial review did not have timestamps and location records consistent with the facts of the investigation which includes the subject being in the area for an extended period of time before the incident, being observed at multiple locations for the Butler incident, and then having no records shortly after the reported time.

7

25. Based on the above mentioned facts including the specific location records for the **TARGET CELLULAR DEVICE** consistent with multiple points and times of video surveillance and the timing of the records which are consistent with being in the area for an extended period and then leaving the area after the incident, that your affiant believes there is probable cause that the **TARGET CELLULAR DEVICE** will contain further evidence of the aforementioned violations including the user of the device. The requested historical and prospective location information will be utilized to locate the **TARGET CELLULAR DEVICE** and identify the individual in possession of the device.

26. The Affiant overlaid video evidence from the Amoco Butler robbery and compared it to device locations corroborating the data. A suspect vehicle was developed and identified as 2013 to 2015 black Chevy Malibu. The suspect vehicle was captured on video surveillance during the Amoco Butler robbery. The location/movement of this vehicle was compared to the cellular device locations of the **TARGET CELLULAR DEVICE** and plotted by investigators and the location/movement is consistent with one another.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

27. I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

28. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

29. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that

8

Case 2:24-mj-00048-WED    Filed 01/25/24    Page 9 of 18    Document 1

route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

30. In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, Timing Advance, LOCDBOR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

31. To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Cellular Devices or receiving

signals from nearby cellular devices, including the Target Cellular Devices. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Cellular Devices and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Cellular Device and use that information to determine the Target Cellular Device's location, even if it is located inside a house, apartment, or other building.

32. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Cellular Devices, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices are collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

33. I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have

10

an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

34. I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) beginning 30 days from the date the warrant is issued.

35. I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from September 10, 2023, to present.

36. I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

37. I further request that the Court authorize execution of the warrant at any time of

11

day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

38.     I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

39.     I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

40.     A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number IMSI 310240265327154, whose wireless provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: unknown subject is the person to whom the pen register or trap and trace device are to be attached/applied and who is the subject of the criminal investigation; IMSI 310240265327154 is the phone number to which the device is to be attached; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of Violence are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

# ATTACHMENT B

**Particular Things to Be Seized
with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular device by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

In order to connect with the Target Cellular Device, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Cellular Devices, and law enforcement will limit collection of information from devices other than the Target Cellular Devices. To the extent that any information from a cellular device other than the Target Cellular Devices is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Cellular Devices from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Devices; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Devices; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Devices.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2)

**Particular Things to Be Seized from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued. This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call

1

measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from **December 1, 2023, to present** pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4. To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5. This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6. The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2).